```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
PALM BEACH STRATEGIC INCOME, LP,

                  Plaintiff,         MEMORANDUM AND DECISION
                                     10-CV-261 (JS) (AKT)
        -against-

STANLEY P. SALZMAN, P.C.,
STANLEY P. SALZMAN, and
MARILYN SALZMAN,

                  Defendants.
----------------------------------X
```

APPEARANCES:
For Plaintiff:          Stephen Mendelsohn, Esq.
                        Greenberg Trauig
                        5100 Town Center Circle, Ste. 400
                        Boca Raton, FL 33486

                        Geoffrey M. Cahen, Esq.
                        Greenberg Trauig
                        5100 Town Center Circle, Ste. 400
                        Boca Raton, FL 33486

For Defendants:

Stanley P. Salzman and
Stanley P. Salzman, P.C.: Peter Biging, Esq.
                        Lewis, Brisbois, Bisgaard & Smith, LLP
                        The Seaport Plaza
                        199 Water Street, Ste. 2500
                        New York, NY 10038

                        Joseph G. Riopelle, Esq.
                        Boyd Richards Parker & Colonnelli PL
                        400 N. Ashley Drive, Ste. 1150
                        Tampa, FL 33602

                        William T. Boyd, Esq.
                        Boyd Richards Parker & Colonnelli PL
                        100 SE Second Street
                        Miami, FL 33131

| | |
|---|---|
| Marilyn Salzman: | Elliot R. Polland, Esq.<br>Hoffman, Polland & Furman, PLLC<br>220 East 42nd Street, Suite 435<br>New York, NY 10017 |

SEYBERT, District Judge:

Plaintiff Palm Beach Strategic Income ("PBSI") brought this action against the Defendants on January 21, 2010 one day after the Court dismissed, for lack of diversity jurisdiction, a nearly identical action that PBSI brought against Defendant Stanley Salzman. Defendants have moved to dismiss. For the following reasons, those motions are GRANTED. The Complaint is DISMISSED WITHOUT PREJUDICE, but with one <u>final</u> opportunity to replead.

BACKGROUND

I. The Proposed Transaction & Subsequent Events

At its core, this action arises out of a complex, multi-party financing transaction which involved $3.5 million put in escrow with Defendant Stanley Salzman and Defendant Stanley Salzman, P.C. ("the P.C.," and together with Stanley Salzman, "the Stanley Salzman Defendants"). Ultimately, the proposed transaction(s) underlying the escrow agreement(s) failed, and the Stanley Salzman Defendants released the escrowed funds to third-parties.

While not explicitly denoted as such, the alleged scheme appears to have been a highly sophisticated version of an

2

"advance fee" fraud, similar to the more commonly known "Nigerian fraud" or "419 fraud." In brief, an "advance fee fraud is perpetrated by enticing the victim with a bogus 'business' proposal which promises millions of U.S. dollars as a reward," provided that the victim first pay a small tax or fee, "supposedly to facilitate the processing and remittance of the alleged funds." In re Guillet, 398 B.R. 869, 883 (E.D. Tex. 2008) (quoting a Central Bank of Nigeria public statement). Here, PBSI alleges that the Stanley Salzman Defendants, and various non-parties, promised to facilitate $100 million in financing, if PBSI first agreed to place a $3.5 million "arrangement fee" in escrow. But the promised financing was mythical, and most of the escrowed arrangement fee was stolen.

More specifically, PBSI alleges that, in 2006, ATN Managed Services, Inc. ("ATN") proposed that PBSI place money in escrow as part of a transaction between ATN, Copicard Systems Holdings LLC ("Copicard"), and 358 1276 Canada, Inc. d/b/a Simco Group ("Simco")[1] to make funds available for a charitable entity based in Puerto Rico. (Compl. ¶¶ 10–13, 16.) PBSI was approached after ATN contacted Martin Halley of Benington Securities, because ATN, Copicard, and Simco lacked the initial funds to kick off the transaction, and sought Benington's help

---

[1] ATN, Copicard, and Simco are not named as defendants in this action.

3

in securing the necessary financing. (Id. ¶ 14.) Halley proposed that a client of his would provide funding, but only after $3.5 million was fully paid as an "arrangement fee." (Id. ¶ 15.) To this end, an interim escrow of the arrangement fee was suggested, with Halley recommending that Stanley Salzman be used as the escrow agent. (Id. ¶ 17.) PBSI agreed to put the money into escrow, and, PBSI alleges, all of the parties entered into an escrow agreement on May 19, 2006 ("May Escrow Agreement"). (Id. ¶ 23.)

The actual May Escrow Agreement, however, conflicts with those last allegations.[2] PBSI did not, in fact, sign the agreement, is not a party to it, and is not designated as the Escrow Provider under it. (See Compl. Ex. A.) Rather, an apparently related company, Palm Beach Capital Management LLC ("PBCM") signed the agreement, becoming a party to it as Escrow Provider. (Id.) Curiously, and perhaps troublingly, the

---

[2] To the extent that the May Escrow Agreement's terms conflict with the Complaint's allegations, the Complaint's allegations are not accepted as true. See In re MBIA, Inc., Sec. Litig., 700 F. Supp. 2d 566, 576 (S.D.N.Y. 2010) ("The Court need not accept as true any allegations that are contradicted by documents deemed to be part of the complaint, or materials amenable to judicial notice."); In re Ciprofloxacin Hydrochloride Antitrust Litig., 261 F. Supp. 2d 188, 216 (E.D.N.Y. 2003) ("if the allegations of a complaint are contradicted by documents made a part therefore, the document controls and the court need not accept as true the allegations in the complaint").

Complaint is utterly silent about PBCM's role. The Complaint does not mention PBCM, much less explain PBCM's relationship to PBSI. And the Complaint does not even attempt to allege that PBSI might have some kind of non-party standing to enforce the Agreement, such as that of an assignee or third-party beneficiary.

Notwithstanding PBCM's contractual role as Escrow Provider, PBSI alleges that it was the entity that wire-transferred the $3.5 million to the Stanley Salzman Defendants on May 30, 2006. (Compl. ¶ 30). PBSI alleges that the Stanley Salzman Defendants then acknowledged receipt of both the May Escrow Agreement and the escrowed funds. (Id. ¶ 31.)

On June 24, 2006, the transaction was terminated when the verifications required by the May Escrow Agreement could not be obtained. (Id. ¶ 33.) These verifications were intended to certify that a company named Kunststofftechnik Vogelsang GmbH had "blocked $100 million in its German Deutsche Bank account." (Id. ¶ 24.) PBSI alleges that ATN informed it that the transaction had failed, and that alternatives were being pursued. (Id. ¶ 35.) PBSI further alleges that ATN sent it a letter on July 18, 2006, seeking PBSI's authority to use the escrowed funds in three different potential financing transactions. (Id. ¶ 38.) PBSI granted this authority to ATN and, subsequently, another escrow agreement was entered into in

July, where PBSI is not identified as a party. (Id. ¶¶ 40-41; Def. Reply Br. Ex. 1 at 5.)

The July Escrow Agreement required the Stanley Salzman Defendants to obtain bank verifications prior to releasing the escrowed money. (Compl. ¶ 43.) PBSI alleges that the Stanley Salzman Defendants failed to properly verify the necessary documents, and instead relied on "patently forged" documents. (Id. ¶¶ 50-60.) On July 26, 2006, Stanley Salzman approved the release of the escrowed $3.5 million, taking $70,000 for himself and the P.C. as a fee, and wiring the rest to bank accounts in Turkey, Dubai, and Portugal, among other places, without PBSI's consent or authorization. (Id. ¶¶ 62-67.) On July 1, 2008, following the PBSI's commencement of the prior action, PBSI alleges that Stanley Salzman transferred his share of the home he owned jointly with his wife, Marilyn Salzman, to her, allegedly in an attempt to defraud his creditors. (Id. ¶¶ 79-80, 134.)

## II. Allegations Supporting the Civil RICO Charge

In support of the civil RICO claim, PBSI alleges that "the [Stanley] Salzman Defendants acted in concert with Sino, Sampaio, Halley, Martin Gibbins . . . and others (collectively, the "Enterprise") to misappropriate PBSI's $3.5 million."[3] (Id.

---

[3] These parties, with the exception of Stanley Salzman and the P.C., have also not been named as defendants in this action.

6

¶ 68.) Claiming that this transaction was part of a common scheme, PBSI alleges that Sampaio, Halley, and Gibbins "would falsely represent that they had contacts with successful European businesses with substantial cash on hand. They held themselves out as providers of financial services to companies . . . that required use of such substantial funds." (Id. ¶ 69.) Allegedly, the Stanley Salzman Defendants were selected to act as escrow agent because Stanley Salzman carried malpractice insurance, and to "lend an air of legitimacy" to the tranasactions. (Id. ¶ 70.) To disguise the scheme, PBSI alleges that the Enterprise provided the Stanley Salzman Defendants with forged documents they could "rely" on before releasing the funds. (Id. ¶ 71.) PBSI alleges that the Enterprise engaged in fraudulent transactions similar to the one here on at least three other occasions throughout the United States, ranging from the summer of 2007 to early 2008, which resulted in lawsuits against the Stanley Salzman Defendants in Texas, Georgia, and another currently pending before this Court. (Id. ¶¶ 74–76.)

---

While it is not entirely clear from the Complaint the relationships between all of these parties, Fernando Sampaio is alleged to be associated with Sino Iberian Holdings Ltd. ("Sino"), and Sino is alleged to be Halley's designee. (Id. ¶¶ 18, 65.) The Complaint contains no information about Gibbins, aside from the allegation that he is a member of the Enterprise, and participated in this scheme and others similar to it. (Id. ¶¶ 68, 69, 70, 74–76.) Information regarding Sampaio's involvement in the Enterprise is also noticeably absent.

PBSI claims that the Stanley Salzman Defendants intentionally defrauded PBSI by inducing it to place money in escrow "knowing that no legitimate financial transaction was actually contemplated," with the knowledge that they intended to release the funds after knowingly receiving forged documents. (Id. ¶ 122.) PBSI further alleges mail and wire fraud as the RICO claim's predicate acts, based on allegations that the Enterprise arranged "to circulate and obtain signatures on the Transaction documents, obtain the $3.5 million from PBSI and to improperly disburse PBSI's $3.5 million to unauthorized individuals overseas." (Id. ¶ 123.) Additionally, PBSI alleges that the Enterprise lacks a legitimate business purpose, and attached as exhibits the complaints from the actions against Stanley Salzman in Texas, Georgia, and the other action before this Court. (Id. ¶¶ 126, 128.)

III. PBSI's Earlier Action in this Court

This action is not PBSI's first attempt to obtain relief for the events underlying this Complaint. PBSI previously brought suit in 2008 on the basis of diversity of citizenship between itself and the Defendants, alleging that it was a citizen of Florida and that the Salzman Defendants were citizens of New York. After the case was transferred here from the Southern District of Florida, PBSI filed two amended complaints, still alleging jurisdiction on diversity grounds.

8

While at first glance diversity of citizenship appeared to exist, as a limited partnership, however, PBSI is a citizen of each State where any of its partners is a citizen. Groupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 569, 124 S. Ct. 1920, 158 L. Ed. 2d 866 (2004). Thus, because the Second Amended Complaint failed to list the citizenship of PBSI's constituent partners, it failed to plead diversity jurisdiction, and the Court dismissed it on that basis. But, recognizing that PBSI could potentially cure this defect, the Court permitted PBSI to file a Third Amended Complaint "for the limited purpose of enabling PBSI to properly plead the citizenship of each of PBSI's constituent partners."

Despite the limited purpose for which leave to file a Third Amended Complaint was granted, PBSI permitted the previous action to be closed, then, the next day, filed this Complaint. This action's Complaint differs from the dismissed Second Amended Complaint in the earlier action by alleging a RICO claim against Stanley Salzman, a common law fraudulent conveyance claim against Salzman's wife, Marilyn Salzman, and federal question, but not diversity, jurisdiction. The Complaint bases federal question jurisdiction on its RICO claim.

On March 3, 2010, after the instant action was transferred to me following an error that originally assigned it to Hon. Arthur D. Spatt, the Court ordered PBSI's counsel to

show cause why they should not be sanctioned under 28 U.S.C. § 1927 due to, among other things, their decision to commence an entirely new action. Defendants then moved to dismiss the Complaint.

PBSI failed to respond to the Court's Order to Show Cause, but did oppose Defendants' motions to dismiss. With the exception of addressing the RICO and fraudulent conveyance claims, these papers largely repeat arguments PBSI first made in the previous action.

DISCUSSION

I. Standard of Review on Motion to Dismiss

In deciding FED. R. CIV. P. 12(b)(6) motions to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009). First, although the Court must accept all of a complaint's allegations as true, this "tenet" is "inapplicable to legal conclusions"; thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Harris, 572 F.3d at 72 (quoting Iqbal). Second, only complaints that state a "plausible claim for relief" survive a motion to dismiss. Id. Determining whether a complaint does so is "a context-specific

task that requires the reviewing court to draw on its judicial experience and common sense." Id.

II. Breach of the May Escrow Agreement[4]

PBSI's first cause of action alleges that the P.C. breached the May Escrow Agreement by releasing the escrowed funds without strictly adhering to agreement's terms.

The P.C. responds that PBSI lacks standing to sue for breach of the May Escrow Agreement because it was neither a party nor an intended beneficiary of this agreement. Rather, the P.C. contends that it entered into the May Escrow Agreement with PBCM, who the Agreement designated as the "Escrow Provider."

PBSI does not dispute that the May Escrow Agreement lists PBCM, and not itself, as a party and as the Escrow Provider. But PBSI contends that its "allegation that the funds originated from PBSI gives PBSI the right to return of the monies and therefore to prosecute this claim." (Pl. Opp. Br. at 12.) PBSI is wrong. Whatever the source of the funds, the May Escrow Agreement requires the P.C. to, in the event the

---

[4] Ordinarily, the Court would examine PBSI's federal RICO claim first, and address the state law claims only if it found that the federal claim was sufficiently pled. See generally Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988). But here, whether Plaintiff has stated an "injury" under RICO depends wholly on PBSI's underlying contractual claims. Thus, the Court must first examine PBSI's common law claims against Stanley Salzman and the P.C., before it can turn to the RICO claim.

11

transaction fails, return the funds "to the Escrow Provider." May Escrow Agreement § 7.2.4. And, once again, the Agreement expressly designates PBCM as the "Escrow Provider." Id. § 1.4. Thus, even if PBSI provided the funds, only PBCM has standing to demand the funds' return. See Cohan v. Movtady, 09-CV-3904, 2010 WL 4608751, at *3, 2010 U.S. Dist. LEXIS 116589, at *7-8 (E.D.N.Y. Nov. 1, 2010) (party listed as "Lender" on promissory note lacked standing to enforce it, because the promissory note expressly vested the right to receive payment with someone else). PBSI further argues that the May Escrow Agreement requires the P.C. to return the funds via the "bank(s) and account(s) from which they were received." May Escrow Agreement § 7.2.4. This is true, but to no avail. The May Escrow Agreement expressly assigns PBCM the right to receive these funds. So, even if PBCM disregarded corporate formalities and its contractual obligations[5] by using PBSI's bank accounts to finance PBCM's obligations, only PBCM has contractual standing to demand that the P.C. return the funds to PBSI's bank accounts.

PBSI also argues, in a footnote, that it can enforce the May Escrow Agreement as an undisclosed principal, because

---

[5] PBCM explicitly warranted that the escrowed funds would come from its "own resources." May Escrow Agreement § 12.1.6. Thus, apparently, the May Escrow Agreement precluded PBCM from using funds belonging to another entity, such as PBSI.

12

PBCM acted as its agent in entering into the agreement. PBSI is correct that undisclosed principals have standing to enforce contracts entered into by their agents. See Aymes v. Gateway Demolition Inc., 30 A.D.3d 196, 196-97, 817 N.Y.S.2d 233, 234 (1st Dep't 2006); Leon Bernstein Commercial Corp. v. Pan American World Airways, 72 A.D.2d 707, 708, 421 N.Y.S.2d 587, 589 (1st Dep't 1979). But, much like in Aymes, PBSI has failed to plead facts (or, for that matter, even conclusory allegations) supporting that PBCM served as its agent when entering into the May Escrow Agreement. Aymes, 817 N.Y.S.2d at 234. Indeed, the Complaint does not even mention PBCM, much less allege an agency relationship.

Apparently cognizant of that pleading defect, PBSI argues that the Court should infer the existence of an agency relationship because the May Escrow Agreement incorporated the Principal Agreement, which designated PBSI as the Escrow Provider. Again, PBSI is wrong. As an initial matter, the Court notes that PBSI did not extend it the courtesy of attaching a copy of the Principal Agreement to its Complaint, or to its opposition to the motions to dismiss. So PBSI is lucky that the Court has elected to consider this document at all.

That being said, having considered the Principal Agreement together with the May Escrow Agreement, the Court rejects PBSI's contention that the Principal Agreement contains

13

enough information to permit an inference of agency.  PBSI bases this argument entirely on the fact that the Principal Agreement designates PBSI as the Escrow Provider.  But PBSI is not a party to the Principal Agreement.  And the actual parties to the Principal Agreement, along with PCBM, signed the May Escrow Agreement, which, in addition to designating PBCM (not PBSI) as the Escrow Provider, set forth that it "supersedes any previous agreements between the parties in relation to such matters." May Escrow Agreement § 15.  Thus, through the May Escrow Agreement, the parties to the Principal Agreement, and PBCM, disclaimed any role for PBSI as Escrow Provider.[6]  These facts do not permit a reasonable inference of agency; at most, they just suggest the substitution of one entity for another.

Consequently, Count I must be DISMISSED.  Under normal circumstances, the Court would not think twice about granting PBSI leave to replead to correct these potentially curable defects.  But it has great hesitation about doing so here.  PBSI has already had four chances in two separate actions, and still hasn't gotten its pleadings right.  PBSI's failure to properly plead Count I is particularly troubling, because it is a basic

---

[6] Additionally, to the extent relevant, the P.C., as Escrow Agent, was expressly not made a party to the Principal Agreement.  See May Escrow Agreement at § 10.7.  Accordingly, the P.C. cannot have contractual liability to PBSI stemming from PBSI's designation, in the Principal Agreement, as Escrow Provider.

14

contract cause of action. It is not subject to a heightened pleading standard, and PBSI has had full control over the relevant facts and documents for some time. Additionally, the Court has serious concerns about PBSI spending 136 paragraphs inaccurately pleading that it negotiated and entered into the May Escrow Agreement, with no mention of PBCM, despite the plain and obvious face of the May Escrow Agreement itself. The Court cannot help but wonder if this failure was innocent, or if it potentially reflected some ulterior motive – such as hiding any judgment recovered in this action from PBCM's creditors.

Despite its hesitation, the Court will begrudgingly grant PBSI leave to replead one last time. The Court stresses that this will be PBSI's <u>last</u> opportunity to replead before the Court enters a dismissal with prejudice.

III. <u>Breach of the July Escrow Agreement</u>

PBSI's second cause of action is asserted against the P.C. for breach of the July Escrow Agreement. PBSI expressly pleads that it is <u>not</u> a party to the July Escrow Agreement, or even referenced in it. (Compl. ¶¶ 40-42.) Nevertheless, PBSI pleads the second cause of action in the alternative to the first cause of action, in case the Court accepts the P.C.'s theory that the July Escrow Agreement supplemented or replaced the May Escrow Agreement.

This cause of action is also DISMISSED. As discussed above, PBSI fails to plead standing to sue under the May Escrow Agreement. So PBSI cannot transfer its non-existent standing from the May Escrow Agreement to the July Escrow Agreement, under a theory that the second agreement supplemented or replaced the first. And PBSI effectively concedes its own lack of standing to sue directly under the July Escrow Agreement. (Compl. ¶¶ 40-42.) PBSI may, however, replead the second cause of action one last time, if it successfully repleads the first cause of action.

IV. The Negligence, Gross Negligence, and Fiduciary Duty Claims

PBSI's third, fourth, and fifth causes of action assert negligence, gross negligence, and breaches of fiduciary duty claims against the Stanley Salzman Defendants. For the following reasons, these claims also fail.

To plead common-law negligence, a PBSI must allege: (1) a duty that the defendant owed it; (2) a breach of that duty; and (3) a showing that the breach of that duty constituted a proximate cause of the injury. Ruiz v. Griffin, 71 A.D.3d 1112, 1114, 898 N.Y.S.2d 590, 592 (2d Dep't 2010). To plead breach of fiduciary duty, PBSI must allege: (1) the existence of a fiduciary relationship; (2) misconduct by the defendant; and (3) damages directly caused by the defendant's misconduct. Rut v. Young Adult Institute, Inc., 74 A.D.3d 776, 777, 901 N.Y.S.2d

16

715, 717 (2d Dep't 2010). Here, the Complaint, when considering documents integral to it, pleads neither the existence of any duty owed PBSI, nor the presence of a fiduciary relationship. The Complaint's sole basis that arguably suggests such a duty or fiduciary relationship is the May Escrow Agreement. But the May Escrow Agreement's plain face refutes any suggestion that the Stanley Salzman Defendants owed PBSI a duty or fiduciary relationship under it. For, as discussed above, PBSI is not a party to the May Escrow Agreement, and PBSI does not allege facts suggesting its status as a third-party beneficiary or assignee. Thus, the May Escrow Agreement does not support Plaintiff's otherwise conclusory allegations that the Stanley Salzman Defendants owed any duty (fiduciary or otherwise) to PBSI. Rather, the May Escrow Agreement supports only that the Stanley Salzman Defendants owed such duties to PBCM, who is not a plaintiff in this action.

Consequently, the third, fourth, and fifth causes of action must also be DISMISSED, again with leave to replead.

## IV. PBSI's Civil RICO Claim

To state a claim under 18 USC § 1961 et seq., PBSI must allege "(1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." DeFalco v. Bernas, 244 F.3d 286, 305 (2d Cir. 2001) (internal quotations

17

and citations omitted). Here, the Court does not address whether PBSI has sufficiently pled a RICO violation, because PBSI has clearly not pled that it suffered any kind of legal "injury to business or property." As discussed above, only PBCM--and not PBSI--has standing to demand that the Stanley Salzman Defendants return the escrowed funds. Thus, only PBCM has suffered a legal injury. So the Court must also dismiss PBSI's RICO claim for lack of standing. See Rand v. Anaconda-Ericsson, Inc., 794 F.2d 843, 849 (2d Cir. 1986) (shareholders lacked standing to sue under RICO because the "legal injury, if any, was to the firm," not the shareholders themselves). Once again, the Court will permit PBSI one last opportunity to replead.

V. PBSI's Fraudulent Conveyance Claim Against Marilyn Salzman

PBSI's last claim is against Marilyn Salzman, Stanley Salzman's wife, and alleges a fraudulent conveyance under N.Y. Debtor & Creditor law § 273-a. Unlike PBSI's other state law claims, PBSI's RICO claim does not depend on this cause of action. And, the Court having dismissed PBSI's RICO claim, it declines to exercise supplemental jurisdiction over Plaintiff's state law fraudulent conveyance claim. See Carnegie-Mellon University, 484 U.S. at 350. Consequently, the Court DISMISSES this claim without considering whether it was property pled. See Wolman v. Catholic Health System of Long Island, 10-CV-1326,

2010 WL 5491182, at *6, 2010 U.S. Dist. LEXIS 137392, at *21-22 (E.D.N.Y. Dec. 30, 2010). The Court, however, permits PBSI to replead this claim as well.

VI. <u>Sanctions</u>

The Court now gives consideration to the Order to Show Cause it issued to PBSI's counsel on March 3, 2010, and which PBSI's counsel ignored. The Court finds that PBSI's counsel sloppily failed to investigate the well-settled law concerning the citizenship of limited partnerships for diversity purposes, then augmented that sloppiness by not seeking leave to file a Third Amended Complaint in the original action. And, if PBSI actually has a cognizable RICO claim, it is also odd that PBSI's counsel waited until PBSI's fourth complaint, and the first action's dismissal, before asserting it. Finally, it is at best sloppy that PBSI's counsel pled a 136 paragraph Complaint in this action that inaccurately alleged PBSI's status as a party to the May Escrow Agreement, and utterly failed to mention the actual party, PBCM. That being said, the Court does not yet find that any of this sloppiness or oddness rises to the level of bad faith. So the Court does not issue sanctions at this time.

<u>CONCLUSION</u>

The motions to dismiss [Docket Nos. 6, 12] are GRANTED. The Complaint is DISMISSED WITHOUT PREJUDICE. The

Court grants Plaintiff one <u>final</u> opportunity to replead a valid Complaint. Plaintiff has twenty (20) days from the date of this Order to do so.

                                              SO ORDERED.

                                          _____/s/_____
                                          Joanna Seybert, U.S.D.J.

Dated:    February 7, 2011
           Central Islip, New York