UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
PALM BEACH STRATEGIC INCOME, LP,

                    Plaintiff,            MEMORANDUM AND DECISION
                                          10-CV-261 (JS) (AKT)
        -against-

STANLEY P. SALZMAN, P.C., STANLEY P.
SALZMAN, and MARILYN SALZMAN,

                    Defendants.
----------------------------------X
APPEARANCES:
For Plaintiff:              Stephen Mendelsohn, Esq.
                           Geoffrey M. Cahen, Esq.
                           Greenberg Trauig
                           5100 Town Center Circle, Suite 400
                           Boca Raton, FL 33486

For Defendants:

Stanley P. Salzman and
Stanley P. Salzman, P.C.: Peter Biging, Esq.
                           Lewis, Brisbois, Bisgaard & Smith, LLP
                           The Seaport Plaza
                           199 Water Street, Suite 2500
                           New York, NY 10038

                           Joseph G. Riopelle, Esq.
                           Boyd Richards Parker & Colonnelli PL
                           400 N. Ashley Drive, Suite 1150
                           Tampa, FL 33602

                           William T. Boyd, Esq.
                           Boyd Richards Parker & Colonnelli PL
                           100 SE Second Street
                           Miami, FL 33131

Marilyn Salzman:           Aaron S. Halpern, Esq.
                           Nixon Peabody LLP
                           50 Jericho Quad, Suite 300
                           Jericho, NY 11753

Joseph J. Ortego, Esq.
Nixon Peabody LLP
50 Jericho Quad, Suite 300
Jericho, NY 11753

SEYBERT, District Judge:

Pending before the Court are Defendants' motions to dismiss. For the following reasons, these motions are GRANTED, and this case is DISMISSED WITH PREJUDICE.

BACKGROUND

This case is either a textbook example of abject legal malpractice, or an attempt to deceive the Court about who the proper parties are, and what the underlying contract controls. Either way, it is a total mess.

On March 12, 2008, Plaintiff Palm Beach Strategic Income, LP ("PBSI") commenced a breach of contract and negligence action against Defendant Stanley Salzman, P.C. ("the P.C.") in the Southern District of Florida. See 08-CV-4188 ("4188 Action"), Docket No. 1. The 4188 Action alleged breach of an escrow agreement, and predicated federal jurisdiction on diversity. The 4188 Action Complaint attached, as Exhibit A, an escrow agreement that identified PBSI as the escrow provider ("PBSI May Agreement"). PBSI signed Exhibit A, but the PC and the agreement's other two parties did not.

The P.C. promptly moved to dismiss or transfer based on lack of personal jurisdiction. See 4188 Action, Docket No.

4. In so moving, the P.C. noted that all the underlying events took place in New York, and that the P.C. had few, if any, Florida contacts.

On October 8, 2008, the Hon. Donald M. Middlebrooks granted the P.C.'s motion, and transferred the 4188 Action to this Court. See 4188 Action, Docket No. 38. Judge Middlebrooks noted that: (i) the P.C. had "sparse" contacts with Florida; and (ii) the parties' escrow agreement "did not contemplate a future or involved relationship with the State of Florida," much less Florida's possibility as a "judicial forum." Id. at 7-8. Thus, Judge Middlebrooks held that PBSI's attempt to drag the P.C. before a Florida court did not "comport with traditional notions of fair play and substantial justice." Id. at 8.

On November 19, 2008, PBSI filed an Amended Complaint, this time naming both the P.C. and Stanley Salzman ("Mr. Salzman") personally as Defendants. See 4188 Action, Docket No. 50. The Amended Complaint, like its predecessor, alleged contract and negligence claims, and predicated federal jurisdiction on diversity. However, it attached a different escrow agreement as Exhibit A. This escrow agreement (hereafter "PBCM May Agreement") did not name PBSI as the escrow provider, or even as a party. Indeed, it did not even mention PBSI. Instead, it identified an apparently related company, Palm Beach Capital Management LLC ("PBCM"), as the escrow provider. The

P.C. signed Exhibit A, as did another party, but PBCM did not. Nevertheless, by attaching it to the Amended Complaint, PBSI and its counsel, Greenberg Trauig, P.A., represented that it was the parties' operative agreement.

Mr. Salzman and the P.C. (collectively, "the Stanley Salzman Defendants") moved to dismiss. 4188 Action, Docket No. 62. This motion did not, however, note that the Amended Complaint had attached a different escrow agreement. Nor did it argue that PBSI lacked standing to enforce the PBCM May Agreement.

On January 14, 2009, PBSI filed a Second Amended Complaint in the 4188 Action. Again, PBSI asserted claims based on contract and negligence. 4188 Action, Docket No. 67. And, again, PBSI predicated federal jurisdiction on diversity. Like its predecessor, the Second Amended Complaint identified the PBCM May Agreement as the operative escrow agreement, attaching it as Exhibit A. And, as before, the Stanley Salzman Defendants moved to dismiss, though without making note of the PBCM May Agreement or otherwise challenging PBSI's standing. 4188 Action, Docket No. 77.

The Court did not reach the Stanley Salzman Defendants' motion. Instead, although missed by all the parties and their counsel, the Court noticed that the Second Amended Complaint failed to assert subject matter jurisdiction, because

4

it did not properly plead diversity. 4188 Action, Docket No. 103. The Court set forth that, under settled Supreme Court precedent, a limited partnership, such as PBSI, is a citizen of every state that its partners are citizens of. Id. (citing Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 569, 124 S. Ct. 1920, 158 L. Ed. 2d 866 (2004)). But, the Court continued, the Second Amended Complaint failed to plead these partners' citizenships. Id. at 3. So, the Court concluded, the Second Amended Complaint did not properly allege diversity. Thus, the Court dismissed the Second Amended Complaint without prejudice, and granted PBSI leave to replead "for the limited purpose of enabling Plaintiff to properly plead the citizenship of each of Plaintiff's constituent partners." Id. at 4.

PBSI did not replead, and the Clerk of the Court closed the 4188 Action. Then, PBSI commenced an entirely new action, 10-CV-0261 ("261 Action"). Effectively a Third Amended Complaint (though not styled as such), the 261 Action pled substantively identical allegations against the Stanley Salzman Defendants. See 261 Action, Docket No. 1. But, notwithstanding the limited purpose for which leave to replead was granted, the 261 Action Complaint did not identify the citizenship of PBSI's constituent partners. Instead, PBSI devised, after three years of litigation and three prior complaints, that its breach of contract and negligence claims were really RICO violations that

5

entitled it to assert federal question jurisdiction. In addition, for the first time, PBSI raised entirely new claims against Stanley Salzman's wife, Marilyn Salzman.[1]

To be frank, the 261 Action flummoxed the Court. The Court permitted PBSI to replead "for the limited purpose of enabling Plaintiff to properly plead the citizenship of each of Plaintiff's constituent partners." 4188 Action, Docket No. 103. It did not grant leave to amend for the purpose of asserting new causes of action, asserting a new jurisdictional hook, or naming new defendants. See FED. R. CIV. P. 15(a)(2) (except as otherwise provided, "a party may amend its pleading only with the opposing party's written consent or the court's leave"). And PBSI did not request leave to amend for any of those purposes. So the 261 Action appeared, on its surface, as nothing more than a transparent attempt to evade the Court's prior orders and to

---

[1] The 261 Action Complaint conceded and relied upon its status as, effectively, an unauthorized amended complaint to the 4188 Action's pleadings. Among other things, the 261 Action Complaint alleged that "[a]fter PBSI commenced this case and served Salzman with process, he undertook efforts to shield his assets," by, among other things, transferring his interest in a marital home to Marilyn Salzman. (261 Action Compl. ¶¶ 79-80.) By "this case" the 261 Action Complaint could only have meant the 4188 Action. The 261 Action commenced with the filing of its original complaint, and Mr. Salzman was not served until eight days after that. See 261 Action, Docket No. 2. So, when the 261 Action Complaint was filed, and before its service, Mr. Salzman could not have done anything "after" its filing and service. Indeed, he allegedly transferred his interest in the marital home back in 2008, roughly 18 months before PBSI commenced the 261 Action. (261 Action Compl. ¶ 80.)

6

manufacture subject matter jurisdiction. Accordingly, the Court ordered Greenberg Trauig, as PBSI's counsel, to show cause for why they have not "unreasonably and vexatiously" "multiplied the proceedings" against the Defendants. See 261 Action, Docket No. 11 at 2. Incorrigibly, Greenberg Trauig ignored this show cause order.

Like the Amended Complaint, and the Second Amended Complaint, the 261 Action Complaint represented the PBCM May Agreement as the parties' operative contract. This time, however, the Stanley Salzman Defendants moved to dismiss on standing grounds. The Stanley Salzman Defendants noted that, "On its face, the May Escrow Agreement demonstrates that [PBCM] was the escrow provider, not PBSI. It goes without saying that Salzman certainly cannot breach a contract (May Escrow Agreement) that PBSI was neither a party to, nor an intended beneficiary thereof." 261 Action, Docket No. 7 at 7.

In response to the Stanley Salzman Defendants' motion, PBSI did not dispute that the PBCM May Agreement was, in fact, the operative May escrow agreement. Instead, PBSI principally argued that, even though the PBCM May Agreement vested PBCM, not PBSI, with all applicable contractual rights (including the right to the money's return if the transaction failed), "[t]he allegation that the funds originated from PBSI gives PBSI the right to return of the monies and therefore to prosecute this

7

claim." 261 Action, Docket No. 15 at 12. But PBSI cited no authority to support this proposition. And for good reason. It is demonstrably wrong. See, e.g., Cohan v. Movtady, 09-CV-3904, 2010 WL 4608751, at *3, 2010 U.S. Dist. LEXIS 116589, at *7-8 (E.D.N.Y. Nov. 1, 2010) (only payee had standing to enforce loan agreement, regardless of who funded loan); Zarintash v. Boffa, 98-CV-2696, 1999 WL 155991, at *2 (S.D.N.Y. 1999) (same); see generally VAC Service Corp. v. Technology Ins. Co., Inc., 49 A.D.3d 524, 525, 853 N.Y.S.2d 577, 578 (2d Dep't 2008).

PBSI also argued, in a footnote, that PBSI had standing to sue as "an undisclosed principal," arguing that "[a]t all relevant times PBCM was acting on behalf of PBSI." 261 Action, Docket No. 15 at 12 n. 3. But, aware that a party cannot constructively amend a complaint through an opposition brief, PBSI "respectfully request[ed] leave to replead" if the Court found that it needed to plead PBCM's role. Id.

On February 7, 2011, the Court granted the Stanley Salzman Defendants' motion to dismiss. See 2011 WL 441778, 2011 U.S. Dist. LEXIS 11566. The Court found that PBSI lacked standing to either enforce the PBCM May Agreement, or claim a right to the money escrowed. 2011 WL 441778 at *4-6, 2011 U.S. Dist. LEXIS 11566 at *13-15. Consequently, the Court found that PBSI failed to allege any cognizable legal injury, under any asserted cause of action.

8

The Court recognized that PBSI's failure to plead standing was a "potentially curable defect[]." Thus, the Court noted, "[u]nder normal circumstances," it "would not think twice about granting PBSI leave to replead." But the Court expressed its "great hesitation about doing so here," because: (i) PBSI has already pled four complaints in two separate actions, and still hadn't gotten its pleadings right; (ii) the defects were in a "basic contract" claim not subject to a heightened pleading standard; (iii) "PBSI has had full control over the relevant facts and documents for some time"; and (iv) PBSI's failure to even mention PBCM, the real party to the escrow agreement, might suggest an "ulterior motive," such as hiding this case from PBCM's creditors. Nevertheless, the Court gave PBSI one final opportunity to replead.

The Court now regrets affording PBSI this leniency. The 261 Action's Amended Complaint does not seek to cure the defects the Court noted in its February 7, 2011 Order. Instead, the 261 Action's Amended Complaint alleges breach of an entirely different underlying contract--the PBSI May Agreement[2] attached

---

[2] The version attached to the 261 Action Amended Complaint differs in some respects from the document attached to the original 4188 Action Complaint. The 4188 Action Complaint's version is signed by PBSI, but not the Stanley Salzman Defendants. The 261 Action Amended Complaint's version is signed both by PBSI and by "Mr. Stanley P. Salzman P.C." The 4188 Action Complaint's version is initialed on each page by the Escrow Provider, but not by the Escrow Agent. Conversely, 261

9

to the original 4188 Action Complaint, but disregarded in three subsequent complaints (dating back to November 2008), despite the Stanley Salzman Defendants' well-founded standing arguments.

The 261 Action's Amended Complaint makes no effort to explain this striking discrepancy. Instead, incorrigibly, it tries to blame the PBCM May Agreement on the Stanley Salzman Defendants, alleging that, "[f]or unknown reasons," they "later generated another version of the May Escrow Agreement, which listed PBCM as the Escrow Provider." (Am. Compl. p. 8 n. 5.) Of course, the Stanley Salzman Defendants did not draft PBSI's three prior complaints, or instruct Greenberg Trauig in how to oppose the Stanley Salzman Defendants' standing arguments.

Aside from pleading the breach of an entirely different contract, the 261 Action Amended Complaint does little to try to rectify the core defect the Court found in its February 7 dismissal order: the failure to plead what, exactly, PBCM did, and what PBCM's relationship to PBSI was. True, the 261 Action Amended Complaint does state that PBCM "solely acted

Action Amended Complaint's version is initialed on each page by the Escrow Agent, but not by the Escrow Provider. Finally, although PBSI signed both versions, and the signature appears, from a lay perspective, to be in the same handwriting, the signature is clearly not identical. Among other things, in the 4188 Action Complaint's version, the letters "revos" in Bruce Prevost's name resemble an "m" and there is little open space inside the "t." In the other version, the "revos" looks flatter and more inverted, like a "w," and the "t" contains more open space. Substantively, however, the two Escrow Agreements are identical.

as agent for PBSI" with "the authority to negotiate agreements and assist PBSI relating to the transactions." (Am. Compl. ¶¶ 5-6.) But the 261 Action Amended Complaint does not then allege that PBCM entered into the May Escrow Agreement as PBSI's agent. See 261 Action, Docket No. 15 at 12 n. 3. Instead, consistent with its newfound reliance on the PBSI May Agreement, PBSI alleged that it, and not PBCM, entered into the May Escrow Agreement and, accordingly, was entitled to receive the escrowed funds if the transaction failed. (Am. Compl. ¶¶ 41-46.)

The Stanley Salzman Defendants and Marilyn Salzman, have filed separate motions to dismiss. Of these, Marilyn Salzman's motion largely protests jurisdictional issues particular to her, while the Stanley Salzman Defendants' motion contests both PBSI's standing and the sufficiency of its core allegations.

DISCUSSION

## I.   Standard of Review

In deciding FED. R. CIV. P. 12(b)(6) motions to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009). First, although the Court must accept all of a complaint's allegations as true, this "tenet" is "inapplicable to legal conclusions"; thus, "[t]hreadbare

11

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Harris, 572 F.3d at 72 (quoting Iqbal). Second, only complaints that state a "plausible claim for relief" survive a motion to dismiss. Id. Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

## II. Which May Escrow Agreement Controls?

Before delving into the asserted claims, the Court must first address the threshold issue of which May Escrow Agreement governs PBSI's claims for this motion's purposes--the PBSI May Agreement, or the PBCM May Agreement?

The Stanley Salzman Defendants argue that the PBCM May Agreement was the operative agreement, and that, consequently, "Salzman certainly cannot breach a contract (May Escrow Agreement) that PBSI is neither a party to, nor an intended beneficiary of." (S. Salzman Def. Br. at 7.) The Stanley Salzman Defendants do, however, set forth, "for the sake of argument," that PBSI also fails to properly allege breach of the PBSI May Agreement.

In response, PBSI argues that the Court should ignore its pleadings in previous Complaints, along with its arguments in opposing the last motion to dismiss. In this regard, PBSI contends that "[a]n amended pleading supersedes prior pleadings

12

and the prior pleadings are of no legal effect." (Pl. Opp. Br. at 5.) But PBSI is wrong.

PBSI relies on two Second Circuit decisions, Ping Tou Bian v. Taylor, 23 Fed. Appx. 75 (2d Cir. 2001) and International Controls v. Vesco, 556 F.2d 665 (2d Cir. 1977). To begin with, PBSI's reliance on Ping Tou Bian, an unpublished summary order, is improper.[3] In any event, both Ping Tou Bian and International Controls are distinguishable. Ping Tou Bian held that a party abandoned a claim by not pleading it in an amended complaint. 23 Fed. Appx. at 77. And International Controls concerned an amended complaint's validity, when the district court entered judgment on the original complaint before the plaintiff successfully served the amended complaint. 556 F.2d at 668-69. Neither dealt with the situation present here: whether, on a Rule 12(b)(6) motion, the Court must accept as true allegations in an amended complaint that blatantly contradict a party's claims in three previous complaints, and in its briefs opposing a prior motion to dismiss.

When faced with such circumstances, no Second Circuit district court has concluded that International Controls renders a party's prior pleadings a nullity. Instead, in most cases,

---

[3] See EM Ltd. v. Republic of Argentina, 720 F. Supp. 2d 273, 294 (S.D.N.Y. 2010) ("a summary order filed prior to January 1, 2007 is not to be cited except in the same case or a related case") (citing Second Circuit Local Rule 32.1.1); United States v. Morrison, 685 F. Supp. 2d 339, 349 (E.D.N.Y. 2010).

district courts have considered prior inconsistent pleadings relevant, but held that they served only as "controvertible, not conclusive" admissions.[4]  But some courts have disagreed, holding that a district court has no obligation to accept as true an amended complaint's allegations, if they "directly contradict[] the facts set forth in his original complaint."[5]  And one of those decisions further held that "dubious and contradictory factual allegations" in an amended complaint can subject a party to Rule 11 sanctions.[6]

Other courts have taken a middle position.  In <u>Barris v. Hamilton</u>, for instance, Judge Batts held that, on a Rule 12(b)(6) motion, a court should typically disregard prior contradictory pleadings, but that "there may be a rare occasion"

---

[4] <u>See, e.g., In re Parmalat Sec. Litig.</u>, 421 F. Supp. 2d 703 (S.D.N.Y. 2006); <u>Zitz v. Pereira</u>, 119 F. Supp. 2d 133, 140 (E.D.N.Y. 1999).

[5] <u>Wallace v. New York City Dept. of Corrections</u>, 95-CV-4404, 1996 WL 586797, at *2 (E.D.N.Y. 1996); <u>Colliton v. Cravath, Swaine & Moore LLP</u>, 2008 WL 4386764, at *6 (S.D.N.Y. 2008) (when a plaintiff "blatantly changes his statement of the facts in order to respond to the defendant['s] motion to dismiss . . . a court is authorized to accept the facts described in the original complaint as true") (internal quotations and citations omitted); <u>see also Gause v. Chase Home Finance LLC</u>, 09-CV-4886, 2010 WL 843945, at *2 (E.D.N.Y. Mar. 9, 2010) (amended complaint's jurisdictional allegations that contradicted original compliant were "frivolous at best, and arguably outright malicious").

[6] <u>Colliton</u>, 2008 WL 4386764, at *13-14.

14

to depart from this usual rule.[7]  And Magistrate Judge Peck has suggested that the inquiry may be one of degree, distinguishing between "blatant" or "directly contradict[ory]" allegations, and allegations that "can be described as clarifying but . . . inconsistent."[8]

The Court agrees that, in a typical case, a prior inconsistent pleading should not trump the Court's obligation under Rule 12(b)(6) to accept a complaint's allegations as true. Indeed, there are valid reasons why a plaintiff would amend a complaint in a contradictory fashion.  For example, a plaintiff may acquire new information through discovery, or its own investigation, that fundamentally alters its theory of the case.[9] But this is not a typical case.  Rather, this is the kind of "rare occasion" that Judge Batts alluded to.

The Court so holds for the following reasons.  First, PBSI did not change its contractual theory shortly after bringing suit.  Instead, PBSI argued consistently, for over two years, through three complaints, and in opposing a motion to dismiss, that the PBCM May Agreement was the operative contract.

---

[7] Barris v. Hamilton, 96-CV-9541, 1999 WL 311813, at *2 (S.D.N.Y. 1999).

[8] Kermanshah v. Kermanshah, 580 F. Supp. 2d 247, 266 (S.D.N.Y. 2008) (distinguishing Wallace).

[9] Had PBSI so explained, this could, conceivably, explain why its pleadings evolved from a contractual theory to racketeering allegations.

15

Second, in dismissing the original 261 Action Complaint, the Court adopted PBSI's own argument that the PBCM May Agreement controlled. So PBSI's newfound reliance on an entirely different contract runs into judicial estoppel problems.[10]

Third, PBSI has not even attempted to explain its behavior. Instead, PBSI ludicrously tries to blame Mr. Salzman for its reliance on the PBCM May Agreement (Am. Compl. p. 8 n. 5). PBSI, however, pleads no facts to suggest that Mr. Salzman could somehow cause PBSI and its counsel to disregard the PBSI May Agreement and, instead, for more than two years, consistently represent that the PBCM May Agreement governed the parties' relationship. And, other than perhaps a resort to sorcery, the Court cannot fathom how Mr. Salzman could have done so.

Fourth, if it so tried, PBSI could not plausibly claim that it learned about the PBSI May Agreement through subsequent discovery and/or factual investigation. For, as an active participant in the underlying events, it certainly should have known what contract governed. Indeed, as noted above, it

---

[10] See Intellivision v. Microsoft Corp., 07-CV-4079, 2011 U.S. Dist. LEXIS 29950 (S.D.N.Y. Mar. 22, 2001) (judicial estoppel precluded court from considering, on summary judgment, a newly presented "Exhibit A" to a contract, where "Exhibit A" fundamentally revised plaintiffs' contractual theory, and plaintiffs had argued that original contract applied in opposing motion to dismiss).

16

attached a version of the PBSI May Agreement to the original 4188 Action Complaint, only to then substitute the PBCM May Agreement for it in its subsequent Complaints. That history, and PBSI's subsequent reliance and active defense of the PBCM May Agreement, strongly suggests that PBSI made a purposeful, strategic decision to put forth the PBCM May Agreement as the operative contract, which it must now live with.

Fifth, PBSI is not proceeding pro se, and thus is not entitled to any special leniency in its pleadings. Instead, it retained Greenberg Trauig, a well-regarded national law firm. Thus, PBSI cannot plausibly claim that it didn't realize the obvious standing problems associated with suing on a contract that it is neither a party to, nor an intended beneficiary thereof.

And sixth, although **not** dispositive, PBSI's late resurrection of the PBSI May Agreement is not its first bewildering action in this litigation. It filed suit in Florida, despite signing a New York contract and suing a New York defendant, based on events that wholly occurred in New York. It asserted diversity jurisdiction, despite apparently never having performed the ten minute Westlaw search that would have irrefutably demonstrated that such jurisdiction did not exist. It, frankly, evaded the Court's order granting leave to replead only "for the limited purpose of enabling Plaintiff to

17

properly plead the citizenship of each of Plaintiff's constituent partners." 4188 Action, Docket No. 103 at 4. It alleged subject matter jurisdiction by asserting RICO violations that, apparently, it never noticed--despite years of litigation--until after the Court found that diversity jurisdiction did not exist. (See generally 261 Action Comp.) And it ignored the Court's Order to Show Cause. See 261 Action, Docket No. 11.[11]

Under these circumstances, the Court finds that it cannot plausibly accept as true that the PBSI May Agreement governed the escrow transaction. Instead, as PBSI represented through three complaints and in opposing the last motion to dismiss, the Court accepts as true that the PBCM May Agreement controlled the parties' relationship.

## III. Accepting the PBCM May Agreement as true, does PBSI allege that it Suffered any Cognizable Injury?

Accepting the PBCM May Agreement as the operative contract begs the following question: can PBSI plausibly assert

---

[11] The Court acknowledges that its Order to Show Cause incorrectly set forth that PBSI did not mark the 261 Action as related to the 4188 Action. The Court predicated this statement on filing papers it had received, which apparently were incomplete, and the fact that the Clerk's Office did not originally assign the 261 Action to this Chambers as a related action. Nevertheless, the Court's Order clearly asked PBSI to explain why its conduct did not violate its limited leave to replead. 261 Action, Docket No. 11 at 1-2. And, although it tried to explain its actions when it opposed the Stanley Salzman Defendants' motion to dismiss (261 Action, Docket No. 15 at 10-11), it did not directly address, or even acknowledge, the Court's Order to Show Cause.

standing, despite being neither a named party to, nor an intended beneficiary of, the PBCM May Agreement?

The answer is "yes," if PBSI successfully pled its status as an undisclosed principal. As the Court previously held, New York law affords undisclosed principals standing to enforce contracts entered into by their agents. See 2011 WL 441778 at *5, 2011 U.S. Dist. LEXIS 11566 at *14 (collecting cases). And, though tersely, PBSI does allege that PBCM "solely acted as agent for PBSI in the transactions that are the subject of this Amended Complaint." (Am. Compl. ¶ 6.) Thus, construing the Amended Complaint liberally in light of the Court accepting the PBCM May Agreement as operative, it could be argued that PBSI attempts to allege, in the alternative, that it served as the undisclosed principal behind the PBCM May Agreement.

Unfortunately for PBSI, it does not successfully plead its status as an undisclosed principal. For, even if the Court construed the 261 Action Amended Complaint as making such an allegation, it would fail, in light of the PBCM Agreement itself.[12] The PBCM May Agreement expressly, and unambiguously,

---

[12] In re MBIA, Inc., Sec. Litig., 700 F. Supp. 2d 566, 576 (S.D.N.Y. 2010) ("The Court need not accept as true any allegations that are contradicted by documents deemed to be part of the complaint, or materials amenable to judicial notice."); In re Ciprofloxacin Hydrochloride Antitrust Litig., 261 F. Supp. 2d 188, 216 (E.D.N.Y. 2003) ("if the allegations of a complaint are contradicted by documents made a part therefore, the

19

proclaims that PBCM is the real party in interest, not some undisclosed principal. Specifically, in the PBCM May Agreement, PBCM explicitly warranteed that "the Escrow Funds are from Escrow Provider's own resources, legitimately earned." (PBCM May Agreement § 12.1.6) (emphasis supplied.) "Own," plainly and unambiguously, means "belonging to oneself or itself," not belonging to some other person or entity, such as an undisclosed principal.[13] And when an "agent expressly and falsely asserts in the contract that he is the principal . . . the actual principal will [] be denied the right to sue." 12 Williston on Contracts § 35:46 (4th ed.); see also Restatement (Third) of Agency § 6.03 (2006) (contract "may exclude an undisclosed principal as a party to a contract by explicitly so providing in a contract").[14]

Moreover, even if the Court could paradoxically interpret "own resources" to mean "not PBCM's own resources, but rather the resources of an unidentified principal," PBSI's

document controls and the court need not accept as true the allegations in the complaint").

[13] http://www.merriam-webster.com/dictionary/own (last visited April 6, 2011).

[14] The Court could not locate any New York authority directly on point. But, under New York law, a contract cannot be enforced against an undisclosed principal when the contract clearly identifies the agent as the real party at interest. Badner v. Fonda Container Co., 177 N.Y.S.2d 769, 771 (N.Y. Sup. Ct., N.Y. County 1958) aff'd, 7 N.Y.2d 861 (N.Y. 1959); 2A N.Y. JUR. 2D AGENCY § 366. Especially in light of that authority, the Court sees no reason why New York would depart from the common law rule, for the purpose of negating agreed-to contractual terms.

20

claims would still fail, because it did not, in fact, supply the escrowed funds.  True, PBSI alleges that, as the real party in interest, it wired $3.5 million to fulfill the Escrow Provider's obligations.  (Am. Compl. ¶ 41.)  But the Court cannot accept that allegation as true.

It is well-settled that the Court, on a motion to dismiss, can consider "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."  Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993).  Likewise, the Court can consider documents "integral to the preparation of the pleadings."  Miller v. Lazard Ltd., 473 F. Supp. 2d 571, 578 (S.D.N.Y. 2007).  And "[i]f these documents contradict" the complaint's allegations, "the documents control" and the Court need not accept the complaint's misstatements as true.  Rapoport v. Asia Electronics Holding Co., Inc., 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000).

Here, the Stanley Salzman Defendants have brought the applicable wire transfer confirmation to the Court's attention.  (Stanley Salzman Def. Br. at Ex. 1.)  That confirmation establishes that the escrowed funds did not come from PBSI, or even from PBCM.  Instead, they came from a third entity, "Palm Beach Capital Corp" ("PBCC").

21

PBSI does not dispute this confirmation's authenticity.[15] Nor does PBSI dispute that it had this wire confirmation in its possession, and relied (or should have relied) upon it in bringing suit. Finally, PBSI does not dispute that a wire transfer confirmation is, indeed, "integral" to a complaint seeking relief based on events stemming from that wire transfer. It follows then that the Court cannot credit PBSI's false claim that it, and not PBCC, funded the underlying transaction's escrow.

This poses an insurmountable problem for PBSI. Under New York law, alleged undisclosed principals cannot recover when they lack title to the funds, goods, or property at issue. See Leon Bernstein Commercial Corp. v. Pan American World Airways, 72 A.D.2d 707, 708, 421 N.Y.S.2d 587 (1st Dep't 1979); See ADVO, Inc. v. The B.C. Corp. of NY, 824 N.Y.S.2d 752 (Table), 2006 WL 2739005, at *3 (N.Y. Sup. Ct., Nassau County 2006). Here, the wire transfer confirmation establishes that PBCC, not PBSI, funded the allegedly stolen escrow. And PBSI pleads no facts to suggest that it somehow had title to the funds in PBCC's bank account. Nor can the Court infer such beneficial ownership,

---

[15] Instead, PBSI makes a big deal over Mr. Salzman's supposed admissions that the funds came from PBSI. (PBSI Opp. Br. at 5-6; Am. Compl. ¶ 43.) But, in light of the actual wire transfer confirmation, Mr. Salzman's previous statements are unavailing. Drawing all inferences in PBSI's favor, Mr. Salzman's previous statements suggest, at most, that he was once mistaken about the funds' source.

given legal presumptions favoring corporate separateness. Consequently, even if PBSI was the secret puppetmaster behind both PBCM and PBCC (an entity not mentioned in any of the complaints), it has, again, failed to plead that it suffered any cognizable injury resulting from the underlying transactions-- regardless of the legal theory asserted.

Having already been given multiple chances to get its pleadings right, PBSI will not get another. This case is DISMISSED WITH PREJUDICE.

IV. Closing Thoughts

The Court has not come to this decision lightly. Both complaints filed in the 261 Action contain enough facts to plausibly suggest that Mr. Salzman's role in the failed transactions constituted "willful misconduct or gross negligence," sufficient to subject him to contractual liability. (PBCM May Agreement § 10.4.) And Mr. Salzman's alleged role in similar alleged "advanced fee frauds" only augments that plausibility. See 08-CV-2852 (E.D.N.Y.); 08-CV-0068 (N.D. Ga.); Case No. 2007-72798 (Harris Cty. Tx.). Thus, accepting those allegations as true, Mr. Salzman injured some entity. And this opinion, essentially, lets him get away with it.

But, after considerable thought, the Court is satisfied enough that this is the right legal call. A plaintiff does not state a claim simply by alleging wrongdoing. Instead,

23

a plaintiff must plead facts that the Court can accept as true, and that identify itself as the entity wronged. Here, thanks to PBSI's shifting reliance on two inapposite contracts, and its false allegations regarding the escrow's funding, it has failed to do so.

There are really only two possible explanations for PBSI's conduct. The first is that PBSI is the victim of Greenberg Trauig's manifest incompetence. Perhaps Greenberg Trauig was just negligent in repeatedly attaching the wrong contract, failing to conduct a basic investigation of the facts (i.e., which contract controlled, what entity actually funded the escrow), and not performing the basic research that would have alerted it to obvious jurisdictional and standing defects in its papers. If that were the case, the Court might, even at this point, have attempted to limit the harm to PBSI. See Lorillard Tobacco Co. v. Jamelis Grocery, Inc., 378 F. Supp. 2d 448, 453 (S.D.N.Y. 2005) (courts should "avoid penalizing parties harshly for the procedural errors of their attorneys"). But Greenberg Trauig has neither accepted responsibility, nor otherwise attempted to explain away the flagrant problems in its papers as no fault of PBSI's.[16] And the Court cannot simply assume that this is the case.

---

[16] It is too late for such an explanation now.

After all, there is another potential explanation: PBCM and/or PBCC are the real parties at interest, not PBSI. That would, after all, explain why PBSI consistently relied upon the PBCM May Agreement, and why PBCC funded the escrow out of its own bank accounts. But, if that's the case, why did PBSI bring this action, instead of PBCM or PBCC? Indeed, why did PBSI not even mention PBCM or PBCC, until the Stanley Salzman Defendants noted their role? In short, why did PBSI hide the ball? The Court cannot conceive of a plausible, innocent answer to those questions.[17]

Some "Palm Beach" entity, perhaps even PBSI, may very well have had a valid claim against the Stanley Salzman Defendants. But no longer. If PBSI thinks otherwise, it can seek relief in the Second Circuit, where perhaps it will find a more sympathetic ear. Alternatively, if the blame lies with Greenberg Trauig, PBSI can demand compensation through a malpractice action. But this case, in this Court, is over.

## CONCLUSION

The motions to dismiss are GRANTED. This case is DISMISSED WITH PREJUDICE. The Clerk of the Court is directed to mark this matter as CLOSED.

---

[17] In this regard, the Court notes that, around the time that the Stanley Salzman Defendants allegedly defrauded PBSI, the SEC has alleged that PBCM was allegedly defrauding investors through its participation in a Ponzi scheme. See SEC v. Prevost, 10-CV-4235 (D. Minn. 2010).

25

SO ORDERED.

/s/ **JOANNA SEYBERT**

Joanna Seybert, U.S.D.J.

Dated:     May  2  , 2011
          Central Islip, New York

26