```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
PALM BEACH STRATEGIC INCOME, LP,

                Plaintiff,           MEMORANDUM AND DECISION
                                     10-CV-0261 (JS)(AKT)
        -against-

STANLEY P. SALZMAN, P.C., STANLEY
P. SALZMAN, and MARILYN SALZMAN,

                Defendants.
----------------------------------X
```

APPEARANCES:
Plaintiff:              Richard M. Asche, Esq.
                        Litman, Asche & Gioiella, LLP
                        45 Broadway
                        New York, NY 10006

Defendants:
Stanley P. Salzman and   Peter Biging, Esq.
Stanley P. Salzman, P.C. Lewis, Brisbois, Bisgaard & Smith, LLP
                         The Seaport Plaza
                         199 Water Street, Suite 2500
                         New York, NY 10038

                         Joseph G. Riopelle, Esq.
                         Boyd Richards Parker & Colonnelli PL
                         400 N. Ashley Drive, Suite 1150
                         Tampa, FL 33602

                         William T. Boyd, Esq.
                         Boyd Richards Parker & Colonnelli PL
                         100 SE Second Street
                         Miami, FL 33131

Marilyn Salzman:         Aaron S. Halpern, Esq.
                         Nixon Peabody LLP
                         50 Jericho Quad, Suite 300
                         Jericho, NY 11753

                         Joseph J. Ortego, Esq.
                         Nixon Peabody LLP
                         50 Jericho Quad, Suite 300
                         Jericho, NY 11753

SEYBERT, District Judge:

This case has a convoluted history. In brief, Plaintiff Palm Beach Strategic Income L.P. ("PBSI") pled five separate complaints across two actions. In none of those complaints did PBSI sufficiently plead a claim. So, on May 2, 2011, the Court dismissed the final iteration of PBSI's pleadings (the Amended Complaint in this action) with prejudice. See 2011 WL 1655575, 2011 U.S. Dist. LEXIS 46867. PBSI now moves for reconsideration and/or relief from judgment. For the following reasons, that motion is DENIED. PBSI's remedy, if any, lies with the Second Circuit.

## BACKGROUND

The May 2 Order recounted this dispute's procedural history in detail. See 2011 WL 1655575 at *1-4, 2011 U.S. Dist. LEXIS 46867 at *1-13. So the Court will not repeat it again.

## DISCUSSION

I.  Standard of Review

PBSI moves for reconsideration and/or relief from judgment.

Motions for reconsideration may be brought pursuant to FED. R. CIV. P. 59(e) and Local Civil Rule 6.3. See Wilson v. Pessah, No. 05-CV-3143, 2007 U.S. Dist. LEXIS 17820, at *4 (E.D.N.Y. March 14, 2007). A motion for reconsideration will not succeed unless "the moving party can point to controlling

decisions or data that the court overlooked--matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." In re BDC 556 LLP, 330 F.3d 111, 123 (2d Cir. 2003). Thus, reconsideration is not a proper tool to repackage and relitigate arguments and issues already considered by the Court in deciding the original motion. See United States v. Gross, 98-CR-0159, 2002 WL 32096592, at *4 (E.D.N.Y. Dec. 5, 2002) ("A party may not use a motion to reconsider as an opportunity to reargue the same points raised previously."). Nor is it proper to raise new arguments and issues. See Lehmuller v. Inc. Vill. of Sag Harbor, 982 F. Supp. 132, 135 (E.D.N.Y. 1997).

Rule 60(b) of the Federal Rules of Civil Procedure provides relief from a judgment for, inter alia, mistakes, inadvertence, excusable neglect, newly discovered evidence, and fraud. FED. R. CIV. P. 60(b). Rule 60(b) provides "extraordinary judicial relief" that may "only be granted upon a showing of exceptional circumstances." Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir. 1986). Accordingly, granting Rule 60(b) relief is "disfavored." Empresa Cubana Del Tabaco v. General Cigar Co. Inc., 385 Fed. Appx. 29, 31 (2d Cir. 2010).

II. PBSI's Motion for Reconsideration

PBSI's motion for reconsideration does not identify any "controlling decisions or data that the court overlooked."

In re BDC 556 LLP, 330 F.3d 111, 123 (2d Cir. 2003). Instead, PBSI largely presents new facts and information that it failed to plead in any of its five complaints, or in opposing Defendants' serial motions to dismiss. None of this material is newly discovered evidence. Instead, it consists entirely of facts that have been within PBSI's possession the whole time, but it never saw fit to bring to the Court's or Defendants' attention. PBSI then uses this new material to relitigate Defendants' motions to dismiss, and argue that the Court erred. This is not proper on a reconsideration motion. See generally Gross, 2002 WL 32096592 at *4.

III. Relief from Judgment

PBSI's motion is somewhat more cognizable as a Rule 60(b) motion for relief from judgment. As noted above, the Court can grant Rule 60(b) relief for mistakes, inadvertence, excusable neglect, newly discovered evidence, and fraud. Here, PBSI argues: (i) the Court erred when it concluded that the PBCM escrow agreement was the operative contract between the parties; (ii) the Court erred in supposedly raising several legal issues sua sponte, and then deciding them against PBSI; (iii) the Court erred when it found that PBSI did not sufficiently allege PBCM's role as its agent; and (iv) the Court erred when it concluded that the funds originated with a third-party, Palm Beach Capital Corp. ("PBCC"). The Court considers each in turn.

A.  The PBSI vs. PBCM Contract

First, PBSI contends that the Court erred in "finding that the PBCM escrow agreement was the 'operative' agreement." (PBSI Br. at 8). PBSI contends that the Court's conclusion was "factually in error" because it "conflicts with the facts, most of which were unknown to the Court," but which PBSI has now supposedly presented. (Id. at 4, 8).

This argument fails, because it relies on a faulty premise. Contrary to PBSI's claim, the Court never concluded, as a factual matter, that the PBCM agreement was the operative contract. Instead, the Court questioned whether it could "accept as true" PBSI's newfound allegation that the PBSI agreement governed, given that this allegation "blatantly contradict[s] [PBSI'] claims in three previous complaints, and in its briefs opposing a prior motion to dismiss." 2011 WL 1655575 at *5; 2011 U.S. Dist. LEXIS 46867 at *15. The Court then concluded that, given the circumstances present here, "it cannot plausibly accept as true that the PBSI May Agreement governed the escrow transaction," and, instead, accepts as true that the PBCM agreement controlled, "as PBSI represented through three complaints and in opposing the last motion to dismiss." 2011 WL 1655575 at *7, 2011 U.S. Dist. LEXIS 46867 at *22. In short, the Court concluded that PBSI pled and litigated itself out of a claim based on the PBSI agreement because, along with

5

other factors, it consistently and repeatedly represented the PBCM agreement as the operative contract. The underlying "truth," as PBSI now claims (PBSI Br. at 6), is irrelevant.

B. <u>The Court's "Sua Sponte" Analysis</u>

Next, PBSI contends that it deserves relief from judgment because--in PBSI's view--the "legal framework supporting dismissal was, in large measure, constructed by the Court," <u>sua sponte</u>. But this argument also fails.

To begin with, PBSI contends that "defendant did not argue that the plaintiff's reference to the PBCM escrow agreement in two[1] prior complaints was conclusively binding on plaintiff." But, although neither Defendant focused on this argument, PBSI incorrectly suggests that neither raised it. In reality, the Stanley Salzman Defendants argued that PBSI's contradictory pleading "calls into question whether an actual contract even existed." Docket No. 32 at 5. And, although the Stanley Salzman Defendants "for the sake of argument" principally litigated the PBSI Agreement's insufficiency (<u>id.</u> at 5), they continued to contend that "Salzman certainly cannot breach a contract (May Escrow Agreement) that PBSI is neither a party to, nor an intended beneficiary of." <u>Id.</u> at 7. And, though terse, PBSI evidently considered these arguments serious

---

[1] It is actually three complaints. <u>See</u> 2011 WL 1655575 at *3; 2011 U.S. Dist. LEXIS 46867 at *7.

6

enough to respond to. Specifically, PBSI contended that they were "not relevant" because "[a]n amended pleading supersedes prior pleadings and the prior pleadings are of no legal effect." Docket No. 39 at 4-5.

Thus, the issue of whether PBSI's prior reliance on the PBCM agreement had "legal effect" was squarely before the Court. And, although Defendants did not themselves identify the authority the Court relied upon, the Court knows of no rule of law that requires it to blindly accept a party's cited authority, or precludes the Court from doing its own research.

PBSI also contends that the Court erred in concluding, sua sponte, that it could not be an undisclosed principal if the PBCM agreement were operative. But this argument also fails. As an initial matter, PBSI suffered no harm from the Court's supposed "sua sponte" detour. By the time it reached this issue, the Court already concluded that it must accept the PBCM agreement as operative. Thus, its prior holding that PBSI was neither a party, nor an intended beneficiary to this contract still applied. See 2011 WL 441778 at *6, 2011 U.S. Dist. LEXIS 11566 at *17-18; 2011 WL 1655575 at *6, 2011 U.S. Dist. LEXIS 46867 at *20. It follows that, if the Court did not consider PBSI's status as an undisclosed principal, it would have dismissed the Amended Complaint with prejudice for PBSI's lack of standing. Instead, the Court extended PBSI the courtesy of

reaching this argument. In any event, this was not a true "sua sponte" analysis. Instead, the Court merely re-raised PBSI's own prior argument that it was the undisclosed principal behind the PBCM Agreement. See 2011 WL 441778 at *5, 2011 U.S. Dist. LEXIS 11566 at *14-15 (addressing PBSI's argument as to the first 261 Action Complaint).

C.  PBCM as PBSI's Agent

Third, PBSI contends that--even if the PBCM Agreement were the legally operative agreement for this action's purposes--the Court erred when it concluded that the PBCM Agreement excluded PBSI as an undisclosed principal. But, once again, the Court finds this argument unavailing.

As no one contests, the PBCM Agreement expressly warranteed that the funds were to come "from Escrow Provider's own resources, legitimately earned." (PBCM Agreement § 12.1.6) (emphasis supplied). In its May 2 Order, the Court held that "own resources" "plainly and unambiguously, means 'belonging to oneself or itself,' not belonging to some other person or entity, such as an undisclosed principal." 2011 WL 1655575 at *7; 2011 U.S. Dist. LEXIS 46867 at *23. Thus, the Court concluded that the PBCM May Agreement precluded the possibility that an undisclosed principal existed.

PBSI thinks the Court's interpretation is wrong. But, in its moving papers, PBSI references only the uncontroversial

8

doctrine that a principal can usually use on a contract in its agent's name. This is not in dispute and, quite frankly, not terribly relevant. What PBCM fails to dispute, through either authority or persuasive argument, is the Court's holding that the contractual requirement that the Escrow Provider use its "own resources" required the Escrow Provider to be the real party in interest. Id. Among other things, PBCM does not explain how "own resources" could mean anything other than the Escrow Provider's own funds, not monies "belonging to some other person or entity, such as an undisclosed principal." Id.

    D.   <u>PBCC as the Source of the Funds</u>

PBSI further contends that the Court erred when it held that, even if it was not contractually precluded from being an undisclosed principal, a wire transfer notice established that the funds actually came from a third-party--PBCC. In actuality, PBSI now claims, PBCC was just a conduit it used to transfer the funds to the Stanley Salzman Defendants. But the Court rejects that this argument warrants Rule 60(b) relief.

At the outset, the Court notes that its consideration of the wire transfer confirmation was not outcome determinative. Before discussing the wire transfer confirmation, the Court already determined that it must "accept[s] as true that the PBCM May Agreement controlled the parties' relationship." 2011 WL 1655575 at *7; 2011 U.S. Dist. LEXIS 46867 at *22. Then it

9

reiterated its prior holding that PBSI was neither a party nor an intended beneficiary to this agreement. See id. And then the Court found that the PBCM Agreement excluded PBSI as an undisclosed principal--regardless of who provided the funds. See id. The Court considered the wire transfer confirmation only for purposes of addressing what the result would be if it could, somehow, "paradoxically interpret" the PBCM Agreement as permitting an undisclosed principal. 2011 WL 1655575 at *7, 2011 U.S. Dist. LEXIS 46867 at *24-25. Because the Court cannot abide such a "paradoxical" interpretation, the wire transfer confirmation was ultimately irrelevant to its decision.

That being said, the Court also believes that PBSI's argument fails on the merits, at least for Rule 60(b) purposes. To that end, the Court recounts the relevant facts below:

When the Stanley Salzman Defendants moved to dismiss the 261 Action's Amended Complaint, they submitted a wire transfer confirmation establishing that the escrowed funds originated in an account owned by PBCC. See Docket No. 32 Ex. A. The Stanley Salzman Defendants then relied on this document, arguing that it showed that PBSI lacked standing because it suffered no legal injury from Defendants' alleged conduct. See Docket No. 32 at 2, 15. In response, PBSI did not dispute the wire transfer confirmation's authenticity, or otherwise seek to document that it actually provided the funds. Nor did PBSI

10

seriously address and attempt to refute the possibility that the Court could consider this document on a Rule 12(b)(6) motion. Instead, PBSI just tersely asked the Court to "ignore[]" the wire transfer confirmation as "outside of the Am. Complaint." See Docket No. 39 at 6 n. 3.

The Court rejected PBSI's argument that the wire transfer document should be ignored. In so doing, the Court held that, even on a Rule 12(b)(6) motion, the Court can consider "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit" or documents "integral to the preparation of the pleadings." See 2011 WL 1655575 at *8, 2011 U.S. Dist. LEXIS 46867 at *25 (internal citations and quotations omitted). Finding that the a "wire transfer confirmation is, indeed, 'integral' to a complaint seeking relief based on events stemming from that wire transfer," the Court concluded that it "cannot credit PBSI's false claim that it, and not PBCC, funded the underlying transaction's escrow." 2011 WL 1655575 at *8, 2011 U.S. Dist. LEXIS 46867 at *26.

PBSI now contends that the Court erred by "accept[ing] and rel[ying] on the defendant's wire transfer document without giving plaintiff notice that it was converting the motion to one for summary judgment." PBSI is wrong. As noted above, and expressly stated in the Court's May 2 opinion, the Court did not

11

"convert[]" Defendants' motion into one for summary judgment. Instead, it considered the wire transfer document under applicable motion to dismiss principles. And, though it is a reasonably close call, it sees no error in concluding that "a wire transfer confirmation is, indeed, 'integral' to a complaint seeking relief based on events stemming from that wire transfer."

But even if the Court found that the wire transfer confirmation was not "integral" to the 261 Action's Amended Complaint, it still should have considered it. For, as noted above, the confirmation attacked PBSI's standing to sue under the PBCM Agreement. And "[w]hen a standing motion is considered under Rule 12(b)(6), the district court is authorized to consider matters outside the pleadings." IMG Fragrance Brands, LLC v. Houbigant, Inc., 759 F. Supp. 2d 363, 374 (S.D.N.Y. 2010) (citing Thompson v. Cnty. of Franklin, 15 F.3d 245, 249 (2d Cir. 1994)) (addressing contractual standing to sue).

E. "Miscarriage of Justice"

Finally, the Court considers PBSI's strongest argument: that denying it Rule 60(b) relief would result in a "miscarriage of justice and would allow a wrongdoer to escape." (PBSI Br. at 7). In this regard, PBSI concedes that many of its problems have been "self-inflicted." (Id.). For instance, it was PBSI's decision (or the decision of its prior counsel,

12

Greenberg Trauig) to "erroneous[ly]" rely on the wrong contract through three complaints and in opposing a prior motion to dismiss, an error "compounded" by its failure to describe "the relationship between PBSI and PBCM"[2] or contest Defendants' "factual claims." (Id. at 1-2). But, PBSI assures the Court, the PBSI Agreement really is the right contract[3], PBSI really did fund the wire transfer, and it has plausible claims against the Defendants. Thus, PBSI asks the Court to give it another shot, and reconsider Defendants' motions to dismiss with the benefit

---

[2] PBSI's decision to not plead PBSI's relationship to PBCM in the 261 Action Amended Complaint is particularly egregious, because this was the core defect the Court cited in dismissing the previous complaint. See 2011 WL 441778 at *2, *5, 2011 U.S. Dist. LEXIS 11566 at *4, 17 (noting that "[t]he Complaint does not mention PBCM, much less explain PBCM's relationship to PBSI," and then, in permitting PBSI to replead, expressing "serious concerns" that PBSI spent "136 paragraphs . . . with no mention of PBCM").

[3] In this regard, PBSI points out that Defendant Stanley Salzman previously testified that PBSI was a party to the May Escrow Agreement. See 08-CV-4188, Docket No. 90-2 at ¶ 4. The Court acknowledges this testimony. The Court notes, however, that it never had occasion to adopt Mr. Salzman's position. Conversely, PBSI spent three complaints and an opposition brief asserting that the PBCM Agreement governed the dispute, the Stanley Salzman Defendants then (notwithstanding their prior position to the contrary) relied upon that assertion when seeking to dismiss the 261 Action Complaint, and the Court adopted PBSI's position when it adjudicated that motion. See Republic of Ecuador v. Chevron Corp., 638 F.3d 384, 395 (2d Cir. 2011) (estoppel may apply when a party has "asserted a fact or claim, or made a promise, that another party relied on, that a court relied on, or that a court adjudicated and then later attempted to take a contradictory stance in that or another proceeding") (internal citations and quotations omitted).

13

of the new information it has (belatedly) supplied, thereby excusing prior counsel's errors.

This is a very close call. On the one hand, the Court considers PBSI's new submissions quite credible, especially given the underlying procedural posture of a motion to dismiss. And, generally, the Court should "avoid penalizing parties harshly for the procedural errors of their attorneys."[4] Mirman v. Comeau, 10-CV-3000, 2010 WL 2977499, at *1 (E.D.N.Y. July 23, 2010).

But, ultimately, these considerations do not quite justify Rule 60(b) relief. The Second Circuit has long counseled against using Rule 60(b) to relieve a party of the "burdens of a final judgment entered against him due to the mistake or omission of his attorney by reason of the latter's ignorance of the law or other rules of the court . . . ." Nemaizer v. Baker, 793 F.2d 58, 62 (2d Cir. 1986) (internal citations and quotations omitted). To that end, "[m]ere dissatisfaction in hindsight with choices deliberately made by counsel is not grounds for finding the mistake, inadvertence, surprise or excusable neglect necessary to justify Rule 60(b)(1) relief." Id. And, "[m]ore particularly . . . an attorney's

---

[4] The alleged errors and mistakes that this opinion discusses are those of PBSI's prior counsel, Greenberg Traurig. PBSI's current counsel took over after the May 2 Order, and the Court sees no fault with its representation.

14

failure to evaluate carefully the legal consequences of a chosen course of action provides no basis for relief from a judgment." Id. This is because "an attorney's actions, whether arising from neglect, carelessness or inexperience, are attributable to the client, who has a duty to protect his own interests by taking such legal steps as are necessary." Id. at 62-63. "To rule otherwise would empty the finality of judgments rule of meaning." Id. at 63. Rather, to obtain Rule 60(b) relief, the moving party needs to show more, such as that its "former counsel lacked authority" to act as it did, or that its counsel's "failures [were] so egregious and profound that they amount to the abandonment of the client's case altogether, either through physical disappearance . . . or constructive disappearance." Nemaizer, 793 F.2d at 62; Harris v. United States, 367 F.3d 74, 81 (2d Cir. 2004) (internal citations omitted, interpreting Rule 60(b)(6)).

Here, PBSI does not allege that "former counsel lacked authority" to repeatedly contend that the PBCM Agreement governed, and otherwise litigate in the fashion they did. Nemaizer, 793 F.2d at 62. On the contrary, the Court can only assume that PBSI "willfully chose th[e] litigation strategy" it did. Silverman v. RTV Communications Group, Inc., 96-CV-7872, 2002 WL 483421, at *3 (S.D.N.Y. 2002). Likewise, PBSI does not claim that its prior counsel physically or constructively

15

disappeared. Harris, 367 F.3d at 81. Furthermore, PSBI does not explain why it failed to "protect its own interests" by making sure its counsel accomplished the fundamentally simple tasks of suing under the right contract and presenting all relevant facts to the Court. See id. Accordingly, the "extraordinary circumstances" necessary for Rule 60(b) relief do not exist. See, e.g., Webb v. City of New York, 08-CV-5145, 2010 WL 3394537, at *5 (E.D.N.Y. Aug. 23, 2010) (denying Rule 60(b) relief despite counsel's failure to respond to court orders or take other actions on client's behalf); Stefanopoulos v. City of New York, 01-CV-0771, 2007 WL 160819, at *3 (E.D.N.Y. 2007) (denying Rule 60(b) relief despite counsel's failure to oppose summary judgment). Indeed, if anything, this is especially so because the Court provided PBSI with chance after chance to get it right.

IV. Closing Thoughts

As in its May 2 Order, "[t]he Court has not come to this decision lightly." 2011 WL 1655575 at *8. This opinion is limited to the question presented: whether PBSI has met the high standards necessary to warrant reconsideration or relief from judgment. The Court finds that it has not. The Court takes no position regarding whether PBSI would have enjoyed a different result if it had included the information it now presents in any of its five pleadings, or supplied it when opposing Defendants'

16

motions to dismiss.  Similarly, the Court acknowledges that both its May 2 Order and this decision required it to make several judgment calls on close or uncertain legal questions.  And well-reasoned jurists may, perhaps, disagree with some of the Court's legal conclusions.  So PBSI may fair better if it appeals to the Second Circuit, where a <u>de</u> <u>novo</u> review not available under Local Civil Rule 6.3 or F<small>ED</small>. R. C<small>IV</small>. P. 59, 60, can be obtained.  But these considerations do not warrant granting PBSI relief now.

## CONCLUSION

PBSI's motion for reconsideration and/or relief from judgment is DENIED.

SO ORDERED.

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated:  June __23__, 2011
        Central Islip, New York